IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| STON YATES; NHAN VAN HOANG; and TERRENCE THAO TRUONG, as Trustee,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF BLOOMINGDALE, a Georgia municipal corporation; DENNIS G. BAXTER; GLENDA KEY; RODNEY C. WEST; JIMMY KERBY; TERRY W. JONES; DAVID OTAKIE; CHARLES AKRIDGE; and DENISE KERBY,<br><br>　　　　Defendants. | CIVIL ACTION NO.: 4:25-cv-141 |

**O R D E R**

Plaintiffs Ston Yates, Nhan van Hoang, and Terrence Thao Truong (as Trustee) brought this action pursuant to 42 U.S.C. § 1983, alleging violations of the Equal Protection Clause of the Fourteenth Amendment.  (Doc. 1.)  Defendants are the City of Bloomingdale, a municipal corporation situated within Chatham County, Georgia (the "City"); Dennis G. Baxter, the Mayor of the City of Bloomingdale ("the Mayor") in both his official and individual capacities; Glenda Key, Rodney C. West, Jimmy Kerby, Terry W. Jones, and David Otakie, all duly-elected members of the Bloomingdale City Council, each in both their official and individual capacities (the "City Council Defendants"); Charles Akridge, the City Administrator for the City, in both his official and individual capacities; and Denise Kerby, the Zoning Administrator for the City, in both her official and individual capacities.  (Id. at pp. 2–3.)  Before the Court is Defendants' Motion to

Dismiss. (Doc. 6.) Plaintiffs filed a Response, (doc. 12), and Defendants filed a Reply, (doc. 14). For the reasons below, the Court **GRANTS** Defendants' Motion to Dismiss. (Doc. 6.)

## BACKGROUND

Plaintiff Yates owns real property located within the City. (Doc. 1, p. 5.) Plaintiffs Hoang (individually) and Truong (as a trustee of a trust) own a separate parcel of property immediately adjacent to Yates' property. (Id. at pp. 6–7.) The City has enacted a Unified Development Code ("UDC") establishing zoning classifications for all real property within the city limits and the procedures by which an owner may apply to rezone their property. (Id. at p. 3; doc. 1-19.) Plaintiffs allege that the City has established a *de facto* practice of allowing property owners to rezone their property by making a "donation" (which Plaintiffs characterize as an exaction) to the City to use for recreational purposes. (Doc. 1, pp. 3–4.)

Plaintiffs' properties have each been zoned RA-1 ("Agricultural") by the City. (Id. at p. 7; see also doc. 1-19, pp. 83, 85–91.) On May 21, 2021, Plaintiffs Yates and Hoang simultaneously filed two separate applications (collectively, the "2021 Application") to rezone their adjacent properties to the I-1 "Intensive Industrial" zoning classification, which would allow them to develop the properties as an industrial warehouse complex. (Doc. 1, p. 7; docs. 1-6 & 1-7; see also doc. 1-19, pp. 84–91.) The City Council Defendants held a public hearing to consider the 2021 Application on January 19, 2023, voting unanimously to deny the Application. (Doc. 1, pp. 7–8.) A written decision denying the 2021 Application was issued on January 20, 2023. (Id. at p. 8; docs. 1-8 & 1-9.)

On December 23, 2024, Plaintiffs filed a second rezoning application (the "2024 Application") to rezone their properties from R-A1 to Planned Industrial Development ("PID") for use as an industrial warehouse complex. (Doc. 1, p. 9; doc. 1-10.) Plaintiffs simultaneously filed

2

an application for a text amendment, seeking to amend the City's zoning ordinance to include Plaintiffs' proposed PID (the "2024 Text Amendment"). (Doc. 1, p. 9; doc. 1-11.) Plaintiffs' counsel subsequently sent a letter to Defendant Akridge, the City Administrator, and Defendant Kerby, the Zoning Administrator for the City. (Doc. 1, p. 9; doc. 1-12.) In the letter, Plaintiffs offered to donate to the City's gymnasium fund as part of a development agreement with the City. (Doc. 1, p. 10; doc. 1-12.) The City then failed to notify Plaintiffs of the City's receipt of the 2024 Application and the scheduled review process within 30 days of receiving the application, as the UDC requires. (Doc. 1, p. 10; see doc. 1-19, p. 49.) Plaintiffs construe this failure to schedule a review process as a "refusal of the Plaintiffs' offer to donate to the City's gymnasium fund in return for approval of the 2024 Application." (Doc. 1, p. 10.) On February 10, 2025, Plaintiffs were notified that Defendants would not move forward on the 2024 Application or the 2024 Text Amendment, as Defendants claimed that state law prevented them from hearing the rezoning request. (Id.)

On April 1, 2025, Plaintiffs filed a third rezoning application (the "2025 Application") to rezone their properties from R-A1 to PID for use as an industrial warehouse. (Id. at p. 11; doc. 1-13.) The 2025 Application also contained a proposed text amendment similar to the one Plaintiffs filed in 2024. (Doc. 1, p. 11; doc. 1-14.) Plaintiffs once again offered to donate to the City's gymnasium fund. (Doc. 1, pp. 11–12; doc. 1-15.) Plaintiffs were notified on April 16, 2025, that Defendants would not move forward on the 2025 Application or text amendment until the Georgia Department of Community Affairs completed its review of the proposed development as a Development of Regional Impact ("DRI"). (Doc. 1, p. 12; doc 1-16.)

In their Complaint, Plaintiffs point to other property owners who have successfully applied for rezoning, arguing that these successful applicants serve as comparators. (Doc. 1, pp. 4–5; see

3

docs. 1-1, 1-2, 1-3, 1-4 & 1-5.) In March 2020, the City approved a rezoning application from a property known as "Ottawa Farms" from RA-1 to PUD/PID for the development of industrial warehouses. (Doc. 1, p. 4.) According to Plaintiffs, the Ottawa Farms application was only approved "after the City exacted a pledge" from Ottawa Farms investors "to donate $1,750,000 to the City for the construction of a new gym." (Id.) This pledge was made publicly at a City Council meeting on February 20, 2020, which Plaintiffs claim was "a condition precedent" of the City's approval of the application. (Id.) In September 2020, the City approved a rezoning application from the FORAM Group, Inc. ("FORAM") seeking to rezone a property from RA-1 to PID for the development of industrial warehouses, a use Plaintiffs characterize as "substantially similar" to their requested rezoning. (Id. at p. 5.) The FORAM application was also preceded by the partners in the proposed FORAM development promising to donate $750,000 to the City for recreational use. (Id.)

Plaintiffs brought this action on June 16, 2025. (Id. at p. 14.) Plaintiffs argue that, despite the "substantial similarity" between the Plaintiffs' proposed development and those of the successful applicants described above, Defendants "did not offer the Plaintiffs the opportunity to make a donation to the City in order to have their rezoning applications approved." (Id. at p. 8.) Plaintiffs allege that Defendants' failure to allow Plaintiffs to make such a donation violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. (Id.) Plaintiffs bring claims against Defendants under 42 U.S.C. § 1983 for violation of their equal protection rights related to the 2021 Application (Count I), violation of their equal protection rights related to the 2024 Application (Count II), and violation of their equal protection rights related to the 2025 Application (Count III). (Id. at pp. 7–13). Plaintiffs seek compensatory damages with respect to each count, seeking the difference between the fair market value of the Plaintiffs' properties as

currently zoned and the fair market value of the properties had the City approved each of the rezoning Applications. (Id. at pp. 13–14.)

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 6.) Defendants argue that dismissal is warranted on six grounds, only two of which are relevant here: (1) the claims based on the denial of Plaintiffs' 2021 rezoning application are time-barred, and (2) the claims based on Plaintiffs' more recent zoning applications are unripe because the City has not yet rendered a final decision. (Id. at pp. 2–3.) Plaintiffs filed a Response, (doc. 12), and Defendants filed a Reply, (doc. 14). The Court will consider each of Defendants' arguments in turn.

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the complaint and limit its consideration to the pleadings and attached exhibits. Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 (2007); Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotations and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12(b)(6) allows a court "to dismiss a claim on the basis of a dispositive issue of law").

**DISCUSSION**

**I.      Whether Count I is Time-Barred**

Defendants first argue that Count I is barred by the applicable statute of limitations. (Doc. 6, pp. 11–16.) Plaintiffs brought this action under 42 U.S.C. § 1983. (Doc. 1.) The limitations period for a Section 1983 claim is determined by the limitations period for personal-injury actions in the state where the claim is brought. Owens v. Okure, 488 U.S. 235, 249–50 (1989); Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). In Georgia, the limitations period for personal injury actions is two years. O.C.G.A. § 9-3-33; see also Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). Count I relates to Plaintiffs' 2021 Application, which was voted on by the City Council Defendants on January 19, 2023, and formally denied on January 20, 2023. (Doc. 1, pp. 7–9.; see

6

also docs. 1-6, 1-7, 1-8, & 1-9.)  Defendants thus argue that, because Plaintiffs filed this action in June 2025, Count I is outside the limitations period and must be dismissed.  (Doc. 6, pp. 11–16.)

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claims are time-barred."  Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013) (internal quotations omitted).  Here, it is readily apparent from the Complaint that Plaintiffs' claim in Count I is outside the two-year statute of limitations and is thus time-barred.  Indeed, Plaintiffs themselves concede that Count I is untimely and do not contest Defendants' argument.  (Doc. 12, p. 7.)  Consequently, the Court **GRANTS** Defendants' Motion to Dismiss as to Count I.

**II.     Whether Counts II and III are Ripe for Review**

Defendants next argue that the equal protection claims relating to the 2024 Application (Count II) and the 2025 Application (Count III) are unripe as the City has not yet made a final decision on either application.  (Doc. 6, pp. 16–17.)  Under Article III of the United States Constitution, federal courts are limited to the adjudication of actual "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1.  "The case-or-controversy restriction imposes what are generally referred to as 'justiciability' limitations."  Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014).  "Three strands of justiciability doctrine—standing, ripeness, and mootness— . . . go to the heart of the Article III case or controversy requirement."  Harrell v. Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotations and alterations omitted).  As to ripeness, that doctrine relates to when a suit may be properly asserted.  Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006).  The purpose of the ripeness doctrine is "to avoid entangling courts in the hazards of premature adjudication."  Shorter v. Warden, 803 F. App'x 332, 335 (11th Cir. 2020).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

7

may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotations and citation omitted). Ripeness directly implicates subject matter jurisdiction. Bauknight v. Monroe Cnty., Fla., 446 F.3d 1327, 1331 (11th Cir. 2006). The Court must therefore determine whether the claims contained in Counts II and III of Plaintiffs' Complaint are ripe for adjudication before proceeding with this case.

Generally, an equal protection challenge to local land-use or zoning decisions becomes ripe for adjudication only after the local government has issued a final decision. See Strickland v. Alderman, 74 F.3d 260, 265 (11th Cir. 1996) ("If the authority has not reached a final decision, the property owner cannot assert an as applied [equal protection] challenge to the decision because, in effect, a decision has not been made.") (internal quotations and citation omitted); Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1541 (11th Cir. 1991) ("In order to establish the ripeness of their equal protection claims, the plaintiffs must show only that the Board has made a final decision denying commercial zoning."); Sunrise Builders, Inc. v. Clayton Cnty., No. 1:21-CV-00715-ELR, 2021 WL 12300168, at *3 (N.D. Ga. July 13, 2021) ("In a case challenging the application of regulations to property, a claim is not ripe until the government entity charged with implementing the regulations reaches a final decision regarding the applications . . . at issue."). Requiring a final decision before reviewing zoning decisions supports important policy goals. As the Eleventh Circuit Court of Appeals has noted, "zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit." Eide v. Sarasota Cnty., 908 F.2d 716, 726 n.17 (11th Cir. 1990). Defendants argue that, because the City has not reached a final decision on either the 2024 or the 2025 Applications, Counts II and III are unripe and must be dismissed. (Doc. 6, pp. 16–17.)

Plaintiffs argue that they should be exempted from the final decision requirement on the grounds of futility. (Doc. 12, pp. 7–8.) A plaintiff may be excused from the final decision requirement if they can show that attempting to pursue a final decision would be futile. See Alderman, 74 F.3d at 265. "[A] property owner need not pursue [a final decision] when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." Church of Scientology of Ga., Inc. v. City of Sandy Springs, 843 F. Supp. 2d 1328, 1348 (N.D. Ga. 2012) (quoting Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 349 (2d Cir. 2005)). As the party asserting a claim of futility, Plaintiffs bear the burden of establishing that the exception applies. See Coles v. City of Jacksonville, No. 3:15-cv-1521-J-34PDB, 2017 WL 6059661, at *10 (M.D. Fla. Dec. 7, 2017). The burden of proving futility is a heavy one. Id. (collecting cases). To meet their burden, it is not enough for Plaintiffs to show that a denial of their applications is possible or even probable; instead, "a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." Id. at *14 (quoting Gilbert v. City of Cambridge, 932 F.2d 51, 61 (1st Cir. 1991)). Establishing futility depends "not [on] a showing that all administrative remedies were exhausted but 'that proceedings have reached some sort of an impasse and the position of the parties has been defined.'" Open Homes Fellowship, Inc. v. Orange Cnty., 325 F. Supp. 2d 1349, 1363 (M.D. Fla. 2004) (quoting Bannum, Inc. v. City of Louisville, Ky., 958 F.2d 1354, 1362 (6th Cir. 1992)). As it relates to the ripeness of a claim, the question of futility is a fact-sensitive one. See Eide, 908 F.2d at 727.

In arguing that further attempts at obtaining a final decision would be futile, Plaintiffs claim that the City has communicated that it will not move forward with either the 2024 Application or the 2025 Application. (Doc. 12, p. 8; doc. 1, pp. 10, 12–13.) In the Complaint, Plaintiffs allege that the City Attorney, acting on behalf of Defendants, expressed that "state law" prevented

9

Defendants from moving forward on the 2024 Application. (Doc. 1, p. 10.) The City Attorney similarly sent an email regarding the 2025 Application, stating that Defendants would not consider either the Application or the 2025 Text Amendment until the State of Georgia reviews the proposal. (Id. at p. 12; doc. 1-16.) Plaintiffs further allege that, to date, Defendants have not scheduled a review process as required for either Application and have failed to comply with procedural requirements with respect to both Applications. (Doc. 1, pp. 10, 12.)

Plaintiffs' claim that Defendants have affirmatively indicated a refusal to move forward with the pending applications is not supported by their Complaint and the materials attached thereto. Rather, even construing those materials in Plaintiffs' favor, Defendants are merely refraining from making a final decision at this time. The City Attorney's communication regarding the 2025 Application makes clear that the review of the 2025 Application "will begin" once Plaintiffs submit a DRI submission for review by the State of Georgia and it asks Plaintiffs to "[p]lease file any approvals of the DRI by the State of Georgia with the City of Bloomingdale *so that the application review process can begin*." (Doc. 1-16 (emphasis added).) As to the 2024 Application, the City's decision to not move is based on the fact that Plaintiffs filed an appeal of the City's denial of the 2021 Application in Chatham County Superior Court and that case remains pending. (See doc. 1-15, p. 1; doc. 14, p. 6–7.) While Plaintiffs have previously objected to the City's decision to refrain from issuing a final decision while the appeal remains pending, (doc. 1-15, pp. 1–3), they have not shown that the decision was made in bad faith or that Defendants will not render a final decision on the 2024 Application following the appeal.[1] Nothing in the record

---

[1] In expressing his disagreement with the City's decision to refrain from moving forward with the 2024 Application due to the pending appeal, Plaintiffs' counsel notes that the relevant provision of the City's UDC does not address appeals of final decisions and argues that filing a new application while an appeal is pending therefore "is not expressly prohibited by the ordinance." (Doc. 1-15, p. 2.) While the ordinance does not prohibit the City from considering the 2024 Application while the appeal is pending, it also does

indicates that Defendants have "dug in [their] heels" such that all pending applications will inevitably be denied. Church of Scientology of Ga., 843 F. Supp. 2d at 1348.

Plaintiffs take issue with the City's understanding of the relevant procedure, claiming that it is the City and not Plaintiffs who must submit the application for DRI review. (Doc. 1, p. 12; doc. 1-17.) Plaintiffs attached to their Complaint the chapter of the Rules of Georgia Department of Community Affairs pertaining to the DRI process, (doc. 1-18), arguing that Rule 110-12-3-.01(2)(a) requires the City to submit Plaintiffs' proposed project to the State of Georgia. (Doc. 1, p. 12; see also doc. 1-18, p. 1.) As best as the Court can tell, Plaintiffs are attempting to establish futility by contending that the City is misconstruing state law to avoid issuing a final decision. (Doc. 1, pp. 10, 12; doc. 12, pp. 7–8.) Defendants respond that Plaintiffs' procedural argument is "more properly characterized as [a] procedural due-process claim[], not [an] equal-protection challenge[] to a final zoning decision." (Doc. 14, pp. 4–5.) Defendants further contend that "any procedural challenge to the City's processing of the applications fails because Plaintiffs have an adequate remedy under state law, including the ability to seek mandamus relief." (Id. at p. 5 (citing Cotton v. Jackson, 216 F.3d 1328, 1333 (11th Cir. 2000).) Indeed, Plaintiffs have in fact sought mandamus to compel action on their pending Applications. (Doc. 14-1.)[2]

---

not require the City to do so. (See generally doc. 1-19.) Plaintiffs have not shown that the City is abusing its discretion or otherwise acting improperly by choosing to refrain from considering the 2024 Application.

[2] The Court may consider Plaintiffs' filings from other proceedings in evaluating Defendants' Motion to Dismiss. A motion to dismiss based on ripeness implicates the Court's subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(1). Johnson v. Hous. Auth. Birmingham Dist., No. 2:17-cv-01474-AKK, 2018 WL 619845, at *2 (N.D. Ala. Jan. 30, 2018). An attack on the ripeness of a claim is a form of factual attack on subject matter jurisdiction. See Town of Indian River Shores v. City of Vero Beach, 622 F. Supp. 3d 1265, 1270 (S.D. Fla. 2022). As such, the Court may consider extrinsic evidence beyond the Complaint. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Moreover, the Court may take judicial notice of filings and orders from other proceedings without converting the motion into one for summary judgment. Knezel v. Wilmington Sav. Fund. Soc'y, FSB, 476 F. Supp. 3d 1244, 1247 n.2 (N.D. Ga. 2020). In doing so, the Court may consider such materials for the purpose of recognizing their existence and not for the truth of any factual assertions contained within them. See Sprengle v. Smith Maritime Inc., 660 F. Supp. 3d 1337, 1351–52 (M.D. Fla. 2023).

11

Whatever the merit of Plaintiffs' position on the relevant state procedure, they have not met their burden of showing futility. While a refusal to comply with procedural requirements out of a desire to avoid issuing a final decision may be evidence of futility, Plaintiffs have not plausibly alleged that Defendants are doing so here. At most, Plaintiffs' allegations show that the parties disagree over the proper procedure for handling the pending applications. Plaintiffs have not plausibly alleged that their pending applications face inevitable denial by Defendants and are instead pursuing state remedies to compel Defendants to render decisions on those applications. The Court thus declines to hold that the final decision requirement is excused here. As a final decision has not been made on either the 2024 Application or the 2025 Application, Counts II and III of the Complaint are not ripe for adjudication. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Counts II and III.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss, (doc. 6), and **DIRECTS** the Clerk of Court to **ENTER** judgment accordingly and to **CLOSE** this case.

**SO ORDERED**, this 29th day of January, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA